Phillips *v.* Tate, Appellant.

Argued November 14, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward G. Bauer, Jr.,* City Solicitor, with him *Mansfield Neal* and *Allan H. Gordon,* Assistant City Solicitors, and *Levy Anderson,* First Deputy City Solicitor, for appellants.

*Edward R. Becker,* for appellees.

 November 16, 1967:

Mr. Chief Justice BELL, Mr. Justice ROBERTS and Mr. Justice O'BRIEN dissent.

OPINION BY MR. JUSTICE COHEN, August 6, 1968:

Section 8-100 of the Home Rule Charter of the City of Philadelphia, provides as follows: "Fiscal Year. For the present, the City's fiscal year shall be the calendar year but the *Council may by ordinance adopt a different fiscal year."* (Emphasis supplied).

Pursuant to this section, the Mayor of the City of Philadelphia submitted a proposed transitional operating budget covering the period from January 1, 1968 to June 30, 1969, in order to effectuate a change in the City's fiscal year. Appellees, taxpayers of the City of Philadelphia, then instituted an action in equity seeking to compel the Mayor to submit an annual operating budget and to enjoin City Council from considering the proposed 18 month budget on the basis

that the Mayor lacked the authority to submit anything other than a 12 month balanced budget. The court below held that the Mayor's proposed budget violated the Charter since it was not an annual balanced budget. From this decree the instant appeal was taken.

Since the Home Rule Charter permits City Council to adopt a different fiscal year in its discretion, we are of the opinion that the method by which such change is effectuated should also be left to the sole discretion of City Council. While we recognize that there are certain inconsistencies and conflicting provisions in the Charter in the area of budgetary matters, we do not feel that we should act as "super charterites" in dictating to City Council how it can best implement a permissive change in the City's financial structure.

There are three possible methods which could be utilized to effectuate a change in the City's fiscal year, e.g., (1) the present proposed 18 month budget; (2) a 12 month budget which would be terminated after 6 months and the submission at that time of another 12 month budget; or (3) a 6 month budget followed by a 12 month budget. In order for City Council to exercise its authority under Section 8-100 of the Charter to change the City's fiscal year, it must adopt one of the aforementioned methods. However, no matter which method is used to effectuate the transition, it would no doubt violate certain aspects of the Charter. To hold that City Council could not validly use some method to effectuate the change from one fiscal year to another, would for all practical purposes render nugatory the permission and authority granted it by §8-100 of the Charter. In this regard, the overriding purpose of §8-100 should prevail so as to permit City Council in its discretion to adopt any one of the three methods suggested, including the proposed 18 month budget.

Furthermore, we recognize, as do all the parties involved, that the proposed 18 month budget encompasses two substantial revenue periods while at the same time includes only one substantial expenditure period. It was readily admitted at argument by appellees that whichever procedure was adopted, including the 18 month budget, the City at the end of 18 months would be virtually in the identical financial position, notwithstanding the fact that the 18 month budget contains two revenue producing periods and only one expenditure period. In light of the foregoing, we find no justification for a court's intrusion into that which a legislative body (City Council) is better equipped to handle.

Decree reversed. Costs on appellees.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

The majority Opinion sustains a clear violation of the Home Rule Charter, which requires the Philadelphia City Council to prepare and submit to the Mayor an annual operating budget which is balanced for the fiscal year in question.

An *annual* operating budget cannot, even by a Procrustean stretch, mean an 18-month budget. It is obvious that Council balanced the present 18-month budget by changing the calendar fiscal 12-month year into a fiscal 18-month year.

Even the majority Opinion admits that "no matter which method [which it advocates] is used to effectuate the transition [from an annual fiscal balanced budget], it would no doubt violate certain aspects of the Charter." Yet, in the plainest disregard of its own admissions, the Majority declare that a clear and undoubted violation of the City Charter is valid.

For these reasons, I dissent.

128

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

On November 14, 1967 this case was argued before the Court; two days later, with the Chief Justice, Mr. Justice O'BRIEN and myself dissenting, an order was filed reciting simply "Decree Reversed. Opinions to follow." Today those opinions have "followed," but the majority opinion, in my view, furnishes no more information, reason or basis for the reversal of a unanimous three judge court below than the terse, two line order which it supposedly supplements. The majority, without analysis or support, declares that so long as the City of Philadelphia may switch its financial household from a calendar to a fiscal year, the Mayor and City Council may effectuate this change by any means whatsoever, and with complete disregard of the Philadelphia Home Rule Charter's requirements. As a result of this perfunctory approach, the majority has totally ignored the well reasoned and finely crafted opinion of the court below (the court consisted of Judges REIMEL, SPAETH and GREENBERG) and what is far more distressing, has judicially endorsed a most flagrant example of budget juggling and fiscal irresponsibility.

The majority takes the position that since it is impossible to switch from a calendar to a fiscal year without, at some point, budgeting for a period of either less than or more than a year, it is not for the courts to examine how this switch may be made. While this could be a possible position if the Philadelphia Home Rule Charter required *only* that the budget be *annual*, since there is an additional charter requirement that the budget be *balanced,* the majority's approval of a budget which, contrary to the Charter, is neither annual *nor* balanced represents an abdication of judicial responsibility. Although it may be argued that the calendar to fiscal year switch cannot be made without slightly sullying the *annual* budget requirement of the

Home Rule Charter, there is no reason whatsoever why this change need embrace the additional Charter violation and fiscal evil of an *unbalanced* budget as well. The Philadelphia Home Rule Charter requires an annual balanced budget, yet the same document also permits a change from the calendar to the fiscal year. The adoption of a fiscal year, however, affects only the annual nature of the budget; it does not affect the requirement that the budget be *balanced*.

What the Mayor proposed, and what Council adopted was the combination of two budgets: (1) an annual (12 mo.) *deficit* budget; and (2) a less than annual budget with a *surplus*. No matter how it is viewed, this 18 month combination budget is far from balanced. At the end of the first twelve months the budget shows a *deficit* of 24.6 million dollars, while at the end of 18 months is reveals a 24.4 million dollar *surplus*. Not only is a budget which provides for a surplus no more balanced than one which shows a deficit, but furthermore the surplus predicted for June, 1969 will be more than erased by the end of calendar year 1969. This is due to the fact that Philadelphia receives only one third of its revenue during the last six months of the calendar year, but pays out half of its appropriated expenditures during that same period.

Moreover, there exists still another serious impediment in the Mayor's 18 month proposal. As the court below so clearly demonstrated: "Section 2-302 of the Charter provides: 'Not later than the passage of the annual operating budget ordinance, the Council shall ordain such revenue measures as will, in the opinion of the Mayor, yield sufficient revenue to balance the budget.'

"Accordingly, the Council could not put off until the end of 1968 the enactment of measures yielding enough revenue to balance the budget during the first half of

1969; rather, it would be required, by ordinance enacted this year, to provide for enough revenue to balance the 18 month budget. The question arises, therefore, whether the Council has the power to levy taxes for an 18 month period. And the answer is that as to real estate and intangible personal property, the Council does not, for with respect to these taxes, the Council's authority is limited to annual taxation. Real estate: Pa. Stat. Ann. tit. 53 §§17031, 17034 (1957); Pa. Stat. Ann. tit. 72 §5020-201 (Supp. 1966). Intangible personal property: Pa. Stat. Ann. tit. 72 §4821 (Supp. 1966)."

Finally, although the Home Rule Charter permits the change from a calendar to a fiscal year, the drafters of the Charter wisely cautioned Philadelphia by commenting significantly on this provision: "It is considered better budgetary practice for the fiscal year to commence on or about July 1: This was not practicable for the City because real estate tax assessment and payment requirements, specified by statute, produce most of the City's revenue in the months of March, April and May. However, Council is empowered to change the fiscal year *when* modification of statutory provisions permits it and *the problem of changing the taxing period has been thoroughly studied.*" (Emphasis supplied.) In spite of this sage warning, the Mayor, and City Council have plunged head first into the fiscal pool without even making sure that the pool has water in it.

Unfortunately, the majority of the Court now approves this action. In so doing, the majority joins the Mayor of Philadelphia and City Council in disregarding the Charter's mandate of annual balanced budgets, as well as the drafters' studied cautionary comment. The record is clear that no study has been made of the taxing statutes, and so far as I am able to tell from reading that record, the city apparently

intends to operate on a fiscal year with the taxing periods continuing unchanged, i.e., with major portions of the city's revenue still coming in during March, April and May. This, of course, will force the city into debt during the first six months of *every single fiscal year.* Such is the inevitable evil which must result from ignoring the Charter's provisions, the comments by its drafters, and the laws of mathematics. The city will now be called upon to make half its expenditures while only one third of its revenue has come in to the treasury. This can only lead to all of the fiscal difficulties accompanying the excess of expenditures over revenue, unbalanced budgets, and deficit financing.

Even the most cursory examination of the 18 month budget now under attack reveals the gaping abyss of financial disaster into which the Council would push the City of Philadelphia, with the approval of a majority of this Court. By the end of 1968, the city will be laboring under a deficit of more than 24 million dollars. Moreover, the majority has totally failed to apply any brakes whatsoever to this deficit budgeting. By refusing to review realistically the actions of the Mayor and City Council in approving deficit and surplus budgets, the majority of this Court impliedly permits the City of Philadelphia to continue deficit and surplus budgeting indefinitely without fear of judicial restraint. As a result, some rather frightening consequences are possible, all based on the majority's carte blanche release of City Council from the clear and specific obligations of its own Charter.

If the ratio of revenue to expenditures remains relatively constant for the next few years, the current deficit will be increased by at least an additional 24 million dollars each calendar year with the result that by the end of 1970 the city budget will show a deficit of close to 73 million dollars. The surplus of

24 million dollars cited by the Mayor as existing by the middle of 1969 is nothing more than a mirage created by the fact that Philadelphia receives two thirds of its revenue during the first six months of the year. Simple mathematics demonstrates how this elusive surplus turns into a whopping deficit in six short months.

Assuming, as we are, that the revenues and expenditures remain constant, we can project the Mayor's 1968 figures into 1969. In 1968 it is estimated that Philadelphia will spend $387,379,000 while its revenues will be $362,680,000. As noted above, during the last six months of the year only one third of the revenue, or approximately $121,560,000 is received while one half of the expenditures, or $193,689,000 are made. This deficit of more than 72 million dollars is hardly offset by the 24 million dollar surplus that will exist in June of 1969. Thus, by the end of 1969 the deficit will be at least 48 million dollars, or *twice* what it was at the end of the year before. Naturally, this situation could continue ad infinitum, until the city is hopelessly in debt. In short, this small excursion into elementary arithmetic is meant to demonstrate what should be obvious. The 18 month budget is no financial rainbow with a 24 million dollar pail of gold at the end. It is instead designed simply to create the illusion that the 24 million dollar deficit for the calendar year 1968 will somehow completely disappear in six months.

It has long been the belief of economists, jurists, and government officials themselves that the tax burden of a municipality should be borne by those individuals who enjoy the benefits derived from that tax money. This is why the Home Rule Charter requires that the city budget be balanced. It is this policy consideration of sound local governmental finance and budgeting as well as the constitutional requirement of

proper taxpayer classification that makes impermissible the adoption of budget deficits by *overspending* and budget surpluses by *overtaxing*. What happens when the budget is not balanced, and it happens even more when the deficit continues to grow year after year, is that taxpayers years from now—taxpayers saddled with repaying the money which the city must borrow to meet its obligations today—will find themselves digging painfully out of the financial hole into which Philadelphia, at this very moment, is so blissfully sliding.*

All of us realize that, even with the most careful planning, operational deficits sometimes occur at the end of a year. But to openly and deliberately create such a deficit in the original planned budget itself is totally inexcusable. This sort of financial irresponsibility, directly proscribed by the Home Rule Charter, should not be practiced by the City of Philadelphia, and it most certainly must not be endorsed by this Court.

Accordingly, I would affirm the decree of the court below.

I dissent.

Mr. Chief Justice BELL and Mr. Justice O'BRIEN join in this dissenting opinion.

---

* I do not wish it thought that I would preclude the use of a fiscal year by the City of Philadelphia, provided the changeover occurred in accordance with the Charter provisions. The shift would still be possible (although it would be preferable to wait until the taxing statutes are also changed) without any deficit or surplus budgeting if the city merely adopted a balanced twelve month budget, suspended it at the end of six months, and substituted another balanced twelve month budget. In fact, this is precisely what was recently done by the School District of Philadelphia when it changed from a calendar to a fiscal year. The utilization of two annual *balanced* budgets to effect a change to a fiscal year is manifestly different from the instant plan of combining two *unbalanced* budgets.